IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

PORTERFIELD STOKES,                     :
                                        :
          Plaintiff,                    :
                                        :
v.                                      :          CASE NO.: 7:19-CV-34 (WLS-TQL)
                                        :
TONIE BENEFIELD, *et al.*,              :
                                        :
          Defendants.                   :
_____ :

## ORDER

Before the Court is a Recommendation issued by United States Magistrate Judge Thomas Q. Langstaff on July 19, 2021. (Doc. 62.) Therein, Judge Langstaff recommends denying Defendant Tonie Benefield's[1] motion for summary judgment "inasmuch as genuine issues of material fact remain regarding Defendant Benefield's warrantless search of Plaintiff's home." *Id.* at 12. The Recommendation provided fourteen days to object. *Id.* at 13. Plaintiff first filed a "Response" agreeing with the Recommendation and informing the Court, in reference to a future trial date, that he has suffered two heart failures recently and is awaiting heart surgery. (Doc. 63.) Thereafter, Benefield timely objected, arguing that "the Magistrate Judge erred in finding a Fourth Amendment violation and, moreover, erred in finding that Defendant was not entitled to qualified immunity." (Doc. 64.) Plaintiff responded thereto on August 8, 2021. (Doc. 65.) The Court will make a *de novo* determination as to those portions of the Recommendation to which an objection is properly made and will review all other

---

[1] Benefield has spelled his name "Tonie Bennefield," "Tonie Benefield," and "Toni Benefield," and it is not clear which is the correct spelling. It would be helpful for Benefield's counsel to file a clarification of the correct spelling so that the Clerk's Office can correct his name on the docket.

portions for plain error or manifest injustice. *United States v. Aponte*, 461 F. App'x 828, 830 n.2 (11th Cir. 2012); *see* 28 U.S.C. § 636(b); Fed.R.Civ.P. 72.

## I.    BACKGROUND

Plaintiff brought this action on February 19, 2019, alleging that on April 19, 2017, Tonie Benefield, Woods, and various other agents conducted a probationary search and seizure at his home even though he was not on probation or parole. (Doc. 1.)[2] Plaintiff alleges that when the officers arrived, he offered to show his release papers, but no one would check his papers, and the Defendants instead searched his home and placed him in handcuffs after finding contraband. (Docs. 1 at 7-9.) Plaintiff alleges that after he signed a consent to search form as a result of threats from Benefield, the agents seized $3,500 and arrested him for violation of parole, felony possession of marijuana with intent to distribute, felony possession of a firearm by a convicted felon, felony possession of tools during the felony commission of a crime, and misdemeanor possession of marijuana. (Doc. 1 at 7-12; Doc. 15.) After a pre-trial hearing, the charges were dismissed, but Plaintiff was jailed for approximately 65 days and paid a bond. (Doc. 1 at 12; Doc. 32 at 3.)

Most of the Defendants and claims in this case were dismissed on March 24, 2020. (Doc. 44.) The only remaining Defendants in this case are Woods and Benefield for Plaintiff's Fourth Amendment claim that these Defendants illegally searched his home. Previously, Woods filed a motion for summary judgment, asserting that he only searched Plaintiff's home upon the belief that Plaintiff was under supervision at the time and after Benefield provided to Woods a written consent to search form signed by Plaintiff. (Doc. 39-2 at 2.) Plaintiff

---

[2] Because Plaintiff is proceeding *pro se*, his pleadings are liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam)

sharply disputed these assertions, and asserted under penalty of perjury that he was not on probation or parole at the time his home was searched, that he was "coerced and forced [] to sign a probation consent to search form and a request for drug test," and that "Officer Woods handcuffs were placed upon Plaintiff before the consent to search were [sic] ever signed as plaintiff signed the paper while in handcuffs." (Doc. 52 at 2-3.) Plaintiff also testified at a deposition that he was not given a consent to search form prior to the search and that he repeatedly informed the officers that he was not on probation or parole, but they would not check his paperwork. (Doc. 53-3). Moreover, Benefield filed a declaration in support of his own motion for summary judgment stating that he knocked on Plaintiff's door and informed Plaintiff that he was there to conduct a parole check, and that Plaintiff responded that he was not on parole and had paperwork to prove it. (Doc. 53-5 at 2-4; Doc. 53-2 at 3.) Benefield does not state that he ever received Plaintiff's consent to search prior to searching, but that after Plaintiff opened the door a second time, "members from the joint task force entered Plaintiff's home and conducted a search." (Doc. 53-5 at 4 ¶ 23.) Because genuine issues of material fact existed and because "a reasonable factfinder could conclude under the facts asserted by Plaintiff that no reasonable police officer would proceed with searching a home as a probationary check where the resident asserts that he has paperwork showing that he is not on parole and he has not consented to the search," the Court denied Woods' motion for summary judgment on Plaintiff's illegal search claim. (Doc. 60 at 10.)

Now pending is Benefield's motion for summary judgment, in which he argues that Plaintiff cannot show a Fourth Amendment violation and that Benefield is entitled to qualified immunity. (Doc. 53.) Benefield attached to his summary judgment motion a statement of material facts and several exhibits. (Docs. 53-2, 53-5, 53-4, 53-5, 53-6.) Plaintiff timely

responded thereto attaching his own factual statements and exhibits. (Doc. 56.) *See* M.D. Ga. L.R. 56. Benefield replied thereto (Doc. 58), and Plaintiff filed a surreply (Doc. 59) which Judge Langstaff did not consider because it was filed without leave (Doc. 62 at 5 n.2). Thereafter, Judge Langstaff issued the pending Recommendation which was based heavily on this Court's denial of Woods' motion for summary judgment on the illegal search claim, and Judge Langstaff concluded that genuine issues of material fact remain as to whether Benefield acted reasonably in searching Plaintiff's home under the circumstances alleged by Plaintiff and in relying on a Parole Certificate that was not signed by Plaintiff. (Doc. 62 at 11.) Benefield timely filed an Objection asserting that "the Magistrate Judge erred in finding a Fourth Amendment violation and, moreover, erred in finding that Defendant was not entitled to qualified immunity." (Doc. 64 at 1.) Plaintiff has responded thereto (Doc. 65), and Benefield filed a reply (Doc. 66.)[3]

## II.   SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, 555 F. App'x 842, 846 (11th Cir. 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "'A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir.

---

[3] The Court is aware of no rule or law permitting a reply brief to be filed in support of an Objection to a Recommendation. *See* Fed.R.Civ.P. 72(b)(2). Nonetheless, the Court has reviewed Benefield's reply in support of his Objection and finds that it does not change the Court's analysis or the outcome of this Order.

2014) (citation omitted). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet that burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. After the movant has met his burden, the Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citation omitted).

The nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. While a Plaintiff can use his affidavit to meet this burden, Fed. R. Civ. P. 56(c)(4), the affidavit must "designate 'specific facts showing that there is a genuine issue for trial,'" and "he may not merely rest on his pleadings." *Graham*, 193 F.3d at, 1282. To avoid summary judgment, the non-movant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir.

1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form."). Furthermore, "[w]hile the Court is not obligated to comb through the record in search of evidence, it is not limited to those pieces of evidence the parties have singled out for attention." *Ezzard v. Eatonton-Putnam Water & Sewer Auth.*, No. 5:11-CV-505 (CAR), 2013 U.S. Dist. LEXIS 139012, at *3 (M.D. Ga. Sep. 27, 2013).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587-88; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III.   ANALYSIS

### A. Fourth Amendment Violation

The Fourth Amendment of the Constitution protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (citation omitted). Ultimately, "[r]easonableness is measured by examining the totality of the circumstances." *United States v. Purcell*, 236 F.3d 1274, 1279 (11th Cir. 2001).

Benefield argues that his search of Plaintiff's residence was not a Fourth Amendment violation because (1) Plaintiff was on parole and therefore was subject to warrantless searches and seizures, and (2) even if Plaintiff was not on parole, Benefield reasonably relied on documentation showing that Plaintiff was still on parole, and his reasonable mistake of fact does not rise to a Fourth Amendment violation. (Doc. 64 at 2-5; Doc. 53-1 at 6-9.) The only "documentation" Benefield mentions are a Chromebook that he checked prior to the search and a Parole Certificate "signed and with a seal from the State Board of Pardons and Parole, which clearly lists Plaintiff as the parolee and shows that his parole expired on May 21, 2017— well after the April 19 search." *Id.* (citing Doc. 53-6.) However, Benefield does not assert that the Chromebook revealed that Plaintiff's parole date expired on May 21, 2017 or months earlier, only that the Chromebook showed "Plaintiff's conviction, the charges for which he was convicted, the start date of his sentence and his discharge date—the date his sentence ended." (Doc. 53-2 ¶ 9; Doc. 53-5 ¶ 11.) Although Benefield attempts to argue otherwise, there is actually no evidence that the Chromebook indicated that Plaintiff was on parole at the time of the search at issue. Thus, there is clearly a genuine dispute of material fact as to whether Benefield could reasonably rely on the Chromebook to conclude that Plaintiff was on parole.

Likewise, the Parole Certificate produced by Benefield contains a signature line and date for Porterfield Stokes to sign and accept its terms, followed by a signature line for an "Institutional Official" to confirm that the parolee has agreed to the terms listed above. (Doc. 53-6.) But both signature lines are blank—neither Plaintiff nor an Institutional Official have signed it. Benefield's counsel counters that he "is not aware of any Supreme Court or Eleventh Circuit case law requiring Plaintiff's handwritten signature." (Doc. 64 at 3.) However, the Parole Certificate literally says in two places that it "will become effective only on the date

stated below and after the conditions of parole are agreed to by the inmate." (Doc. 53-6 at &
2.) There is no evidence that Plaintiff agreed to the Parole Certificate produced or that it was
ever "effective."

Moreover, the U.S. Supreme Court has held that a search of a parolee or probationer
is reasonable because the parolees' "acceptance of a clear and unambiguous search condition
'significantly diminished [his] reasonable expectation of privacy.'" *Samson v. California*, 547 U.S.
843, 852 (2006) (quoting *United States v. Knights*, 534 U.S. 112, 122 (2001)). In other words, a
key component of finding such a search reasonable is that the search condition is "'clearly
expressed' to petitioner," "signed," and the parolee is "'unambiguously' aware of it" such that
he "d[oes] not have an expectation of privacy that society would recognize as legitimate."
*Samson*, 547 U.S. at 852. Thus, there is a genuine dispute of material fact whether a parole
certificate that is not signed by the person supposedly on parole or by an institutional official
can reasonably be relied on to search that person's house. Numerous courts have reached the
conclusion that officers cannot rely on the parole search as an exception to the Fourth
Amendment where they did not reasonably believe the suspect was on parole. *See, e.g.,*
*Muhammad v. City of Long Beach*, No. CV 13-208-AB (PLA), 2019 U.S. Dist. LEXIS 167858, at
*31-32 (C.D. Cal. May 31, 2019) ("A warrantless parole search is permitted— and does not
run afoul of the Fourth Amendment— only if the targeted individual is in fact on parole. . . .
[A]n objectively reasonable, albeit mistaken, belief that an individual is subject to a warrantless
search is insufficient to side-step the presumption under the Fourth Amendment that a
warrantless search is unreasonable."); *Moore v. Vega*, 371 F.3d 110, 116 (2d Cir. 2004) ("Because
plaintiff is not a parolee, she cannot be subjected to the same burdens upon her privacy, and
the departures from the usual warrant and probable-cause requirements allowed with respect

to parolees are not justified for her."); *Bliss v. Franco*, 446 F.3d 1036, 1044 (10th Cir. 2006) (reversing grant of qualified immunity to probation officers who mistakenly believed that plaintiff remained on probation because there was a genuine factual dispute as to whether their belief was reasonable).

In addition to Benefield's evidence, Plaintiff's own testimony, evidence and declarations[4] further create a dispute of fact as to whether Plaintiff was actually on parole and whether it was reasonable for Benefield to believe that Plaintiff was on parole at the time of the search at issue. Plaintiff testified that days before the search, two probation officers observed Plaintiff in his yard talking with another person who was on probation, and they asked Plaintiff if he had reported to his probation officer. (Doc. 53-3 at 14.) Plaintiff informed them that he was not on probation or parole, and the officers responded that they would check and come back. *Id.* As a result of this conversation, Plaintiff had his wife come over, and he gathered his paperwork and placed it on the coffee table for when the officers came back. *Id.* Officer Tonie Benefield arrived at Plaintiff's house on the morning of April 19, 2017, and Plaintiff responded that he was not on parole or probation. *Id.* Benefield responded that he had paperwork showing that Plaintiff was on probation or parole, and Plaintiff responded that he had paperwork that he was not on probation or parole. *Id.* Benefield still asked to come in, and after Plaintiff returned from telling his wife to get dressed, Plaintiff opened the door and "everybody just rushed into the house and started searching the house." (Doc. 53-5 at 15.)

---

[4] It does not matter that Plaintiff's (as Benefield's) statements are self-serving. *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) ("[A] litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.").

Plaintiff testified that Benefield was the first to enter, followed by Woods, and that he could see outside the FBI, GBI, and news media. (Doc. 53-5 at 15.) Plaintiff testified that he continued telling the officers that he was not on probation or parole, that he had paper's "right there on the table," and that they needed to show him a warrant. *Id.* No one checked Plaintiff's paperwork. *Id.* Although Plaintiff admits in response to questioning from defense counsel that Benefield made a mistake because the date on the paperwork was wrong (Doc. 53-3 at 25), Plaintiff did not testify, and the Court cannot find, that Benefield was merely negligent. *Maughon v. Bibb Cty.*, 160 F.3d 658, 660 (11th Cir. 1998) ("Negligent or innocent mistakes do not violate the Fourth Amendment."). Plaintiff also testified that Benefield admitted "[W]e're here to do our job. We ain't got time to stop and be reading your paperwork," and Plaintiff asserts that they would not have searched his home if they had "just looked at the papers." (Doc. 53-3 at 25.) A reasonable jury could agree.

This case did not require that Benefield "sift through conflicting evidence or resolve issues of credibility" or "explore and eliminate every theoretically plausible claim of innocence before making an arrest." (Doc. 64 at 5) (citing *Dahl v. Holley,* 312 F. 3d. 1228, 1234 (11th Cir. 2002) and *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2006)). The Court agrees with Benefield that it "would have been the diligent thing to" confirm Plaintiff's status with Plaintiff's parole officer, but, a reasonable jury could conclude that Benefield could have and should have done even less. A reasonable jury taking the facts in the light most favorable to Plaintiff could find that no reasonable officer performing a parole search would proceed with searching a suspected parolee's house without checking the suspected parolee's purported release papers.

The legal standard at the summary judgment stage is not to take the facts in the light most favorable to Benefield, but in the light most favorable to Plaintiff. Under this standard, there remains a genuine dispute of material fact as to whether Benefield violated Plaintiff's Fourth Amendment right to be free from unreasonable searches, and a reasonable factfinder could conclude that such a violation was committed.

## B. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231 Further, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citation and internal quotation marks omitted). The "'salient question' . . . is whether the state of the law gave the defendants 'fair warning' that their alleged conduct was unconstitutional." *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (citation omitted). Here, Benefield had been fairly warned.

In 1979, the former Fifth Circuit Court of Appeals held that officers who have "a good faith and reasonable belief in the validity of the search warrant may nonetheless incur liability under 42 U.S.C. § 1983 . . . if the warrant is executed in an unreasonable manner," and concluded that, under the facts of that case, a "reasonable jury could have held that [the

officers'] execution of the search warrant was malicious, arbitrary or capricious." *Duncan v. Barnes*, 592 F.2d 1336, 1338 (5th Cir. 1979).[5] Accordingly, the court held that the officers could be found liable for violating the Fourth Amendment under § 1983. *Id.* In 1987, the Supreme Court clarified that police officers are "required to discontinue the search of [an] apartment as soon as they . . . [are] put on notice of the risk that they might be in a unit erroneously." *Maryland v. Garrison,* 480 U.S. 79, 87 (1987). Thereafter, the Eleventh Circuit Court of Appeals reversed a grant of summary judgment to an officer who had obtained a search warrant but mistakenly led officers to enter and search the wrong home. *Hartsfield v. Lemacks*, 50 F.3d 950, 956 (11th Cir. 1995), *as amended* (June 14, 1995) (recognizing that although there is a "'need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants,' [the officer's] actions in this case were simply not 'consistent with a reasonable effort to ascertain and identify the place intended to be searched' as dictated by *Garrison*"[6]). The Court of Appeals later held that even if an officer did not make "the initial decision to enter . . .  but instead merely followed the other officers inside, . . . . their unconstitutional behavior did not relieve [defendant] of his responsibility to decide for himself whether to violate clearly established constitutional rights by intruding . . . without a warrant or exigent circumstances." *O'Rourke v. Hayes*, 378 F.3d 1201, 1210 (11th Cir. 2004).[7]

---

[5] *See Bonner v. Prichard*, 661 F.2d 1206, 1210 (11th Cir. 1981) (adopting former Fifth Circuit case law as binding in the Eleventh Circuit).

[6] *Maryland v. Garrison*, 480 U.S. 79, 87 (1987).

[7] Benefield argues that other officers made the same assumption that Plaintiff was on parole, as "evidence of the reasonableness of Defendant's belief that Plaintiff was on parole." (Doc. 53-1 at 14.) However, the Court of Appeals further found in *O'Rourke* that "[h]ad he taken even a moment to consider the clearly established law of this circuit, he would not have followed the lead of the other officers in entering . . . . Indeed, had the officers he accompanied displayed the courtesy, professionalism, and respect citizens have the right to expect, they would not have acted with the unbridled arrogance of those who believe they will never be held

Thus, at the time of the search at issue, "it was well-established as a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Hartsfield*, 50 F.3d at 954 (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). It was further "clearly established law that, absent probable cause and exigent circumstances, a warrantless search of a residence violates the Fourth Amendment, unless the officers engage in reasonable efforts to avoid error." *Id.*[8] Here, too, once Plaintiff informed Benefield that he was not on parole and had paperwork present that showed that he was not on parole, Benefield was put on notice of the risk that he might be in Plaintiff's home unlawfully, and Benefield was required to engage in reasonable efforts to avoid violating Plaintiff's Fourth Amendment rights. *Id.*; *Garrison*, 480 U.S. at 87. Based on the foregoing binding precedent, the Court cannot find that Benefield acted reasonably in, or that he was unaware of the potential unconstitutionality of, searching a suspected parolee's house without, at a minimum, checking the parolee's purported release papers which the parolee was prepared to show. Thus, qualified immunity is not appropriate.

In ruling on a motion for summary judgment, the Court must determine "whether the evidence [submitted by the non-movant] presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

---

accountable for their behavior." 378 F.3d at 1210 (affirming denial of qualified immunity). The same admonishment in all similar cases.

[8] Benefield is correct that in the Eleventh Circuit, "a plaintiff can show that the law is clearly established by showing 'that a materially similar case has already been decided,' by showing that 'a broader, clearly established principle should control the novel facts' of a particular situation, or by showing that his case 'fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary.'" (Doc. 53-1 at 11) (quoting *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019)). Any one will suffice, and here, at least the second or third have been satisfied. *See also Jamar v. United States*, Civil Action No. CV-08-S-1145-NE, 2009 U.S. Dist. LEXIS 150977, at *44-45 (N.D. Ala. Aug. 28, 2009); *United States v. Longoria*, 183 F. Supp. 3d 1164, 1177 (N.D. Fla. 2016); *Tribue v. Hough*, No. 3:04cv286/RV/EMT, 2006 U.S. Dist. LEXIS 837, at *29-30 (N.D. Fla. Jan. 6, 2006).

law." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). As explained above, the evidence here is not so one-sided that Benefield must prevail as a matter of law. Therefore, Benefield's objection (Doc. 64) is **OVERRULED**.

<u>**CONCLUSION**</u>

Accordingly, upon full review and consideration of the record, the Court finds that the Recommendation (Doc. 62) should be, and hereby is, **ACCEPTED**, **ADOPTED** and made the Order of this Court for reason of the findings made and reasons stated therein, together with the findings made and conclusions reached herein. Benefield's motion for summary judgment (Doc. 53) is **DENIED**, and his Objection (Doc. 64) is **OVERRULED**.

The Parties will be noticed to prepare for a pretrial conference.

**SO ORDERED**, this <u>30th</u> day of August 2021.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**